AGNES T. CHUCK, et al., Plaintiffs-Appellees, *v.* MABEL T. GOMES, et al., Defendants, ANTONE S. TEIXEIRA, Defendant-Appellant, AMFAC FINANCIAL CORP., Defendant-Intervenor-Appellee, CLIFFORD P. S. SHIN, Defendant-Intervenor-Appellant

NO. 5449

FEBRUARY 28, 1975

RICHARDSON, C.J., KOBAYASHI, OGATA AND MENOR, JJ., AND CIRCUIT JUDGE FONG ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY KOBAYASHI, J.

This is an appeal from the decree of the trial court ordering a sale of realty at public auction rather than a partition of the real estate. We affirm.

The real estate is owned equally by nine individuals as tenants in common, each owning an undivided one-ninth (1/9th) interest in fee. An action for partition of the realty or sale thereof was filed by three of the owners against the other owners.

The issues are: (1) whether or not evidence adduced at the trial made it appear "that a partition cannot be made without great prejudice to the owners", and (2) whether or not the trial court was correct in requiring the sale of the realty at public auction.

The relevant statutes are HRS § 668-1,[1] which provides in part:

§ 668-1 *Suits for partition.* When two or more persons hold or are in possession of real property as joint tenants or as tenants in common, in which one or more of them have an estate in fee, or a life estate in possession, a suit in equity may be brought by any one or more of them in the circuit court of the circuit in which the property is situated, for a partition of the property, according to the respective rights of the parties interested therein, and *for a sale* of the same or a part thereof *if it appears that a partition cannot be made without great prejudice to the owners* [emphasis added] . . .";

and HRS § 668-7(6)[2] which provides:

§ 668-7 *Powers of the court.* The court shall have power:

. . . .

(6) to divide and allot portions of the premises to some or all of the parties and order a sale of the remainder, or to sell the whole, where for any reason partition in kind would be *impracticable* in whole or in part *or be greatly prejudicial* to the parties interested, . . . . (Emphasis added.)

The trial court issued an "Order for Commissioner to Investigate and Report to the Court Re Feasibility of Partition of Property" which provided, *inter alia,* as follows:

"1. The Court hereby appoints John W. J. Lum, as Commissioner in partition, to investigate and report to the Court as to the feasibility and practicality of the partition of the property described in the Complaint filed herein for a (1)

---

[1] Prior to amendment by Act 90, S.L.H. 1972.

[2] *Id.*

one-ninth (1/9th) interest in favor of Antone S. Teixeira, and a (2) eighth-ninth (8/9th) interest in favor of a proposed purchaser *or in any other division* and to prepare a plan for such division into lots or *as to the non-feasibility and impracticality of any physical partition of said property."* (Emphasis added.)

The trial court's order was premised on the fact that there was constant bickering and disagreement among the nine owners and upon the further fact that, of the nine persons who owned the fee as tenants in common, only defendant Antone S. Teixeira initially refused to agree to sell the real estate to a proposed purchaser. Mr. Antone Teixeira sought to have his share by way of partition of the realty, or in the alternative, be given the right to purchase the entire property in question.

The filed report of the Commissioner, a registered civil engineer and a land surveyor, gives the following relevant facts:

1. The total area of the property is 178,325 square feet and a one-ninth parcel would be composed of 19,814 square feet;

2. The main portion of the property is approximately 300 feet in width and 500 feet in length:

3. The land rises from approximately 75 feet in elevation to 225 feet;

4. In general, the tract is characterized by four strips of fairly uniform slopes. From the southerly boundary the land rises on a 16% slope for 160 feet, followed by a 60% slope for 110 feet. leveling to a 12% slope for 155 feet and ending with a steep 80% slope for the last 50 feet;

5. Access to this land is from Keanu Street over a private 30-foot wide roadway which is a part of the southwesterly segment of this tract. This roadway serves several other parcels of land and may not be closed;

6. The zoning for the property is presently R-6. While the General Plan of the City and County of Honolulu has designated the property for a school site, however, the Department of Education of the State has no present or future plans to develop the property as a school site;

7. It is feasible and practical to partition the property into

two separate parcels — one parcel would contain 19,814 square feet and the other parcel would contain 158,511 square feet;

8. An exhibit map "A" shows the 19,814 square foot parcel as Parcel A and an alternate Parcel B. Parcel A is contiguous to land owned by defendant Antone S. Teixeira and Marjory Ann Teixeira. Further, Parcel A has the same general topography as the remaining 158,511 square foot parcel. In addition, Parcel A can be consolidated with Antone and Marjory Teixeira's land into a parcel acceptable to the City's Planning Department;

9. Parcel B would lengthen and enlarge Antone and Marjory Teixeira's land. This addition would be in more level land but would be encumbered by a 30-foot right-of-way (2,733 square feet) to the 158,511 square foot parcel. Parcel B would separate the remainder into two parcels and its acceptability to the City's Planning Department would be in doubt;

10. In conclusion, the Commissioner recommended only the partition in kind creating Parcel A, as shown on Exhibit A, and the eight-ninths (8/9ths) portion.

At the trial the Commissioner, in answer to a question whether or not it was *possible* to subdivide the realty into nine separate parcels, stated that it was *possible* to so subdivide but *difficult*.

Mr. Ray W. Hambleton, a licensed real estate appraiser, testified to the effect that the realty is worth more if partition is not had. He further testified that Parcels A and B are worth less separated from the whole of the realty and that Parcel B is worth more than Parcel A.

Testimony adduced at the trial show clearly that Antone Teixeira rejected Parcel A and further, he was so equivocal in his answer as to Parcel B that the trial court concluded that Antone Teixeira would not accept Parcel B as a proper partition of the realty as his share.

The trial court, in its decree of sale of the realty, held that a partition of the real property into nine individual parcels was not feasible.

The appellants do not contest the trial court's finding of the lack of feasibility. However, they contend that the record

herein fails to show that a partition of the realty into nine individual parcels or any other form of partition would be with great prejudice to the owners. We disagree with appellants' contention. The totality of the proceeding shows that a partition of the realty into nine individual parcels or any other form of partition would be with great prejudice to the owners.

In the instant case Antone Teixeira refused to accept Parcel A or Parcel B in satisfaction of his one-ninth (1/9th) undivided interest in the realty. And neither Antone Teixeira nor the other appellants urged upon the court or adduced evidence regarding a different form of partition of the realty that would be feasible or practical, that is, a partition that would be without great prejudice to the owners.

In addition, the Commissioner, after receipt of the order of the trial court directing him to determine the feasibility of a partition of the realty not only into one one-ninth (1/9th) parcel and one eight-ninths (8/9ths) parcel but also a partition of the realty "in any other division", concluded that only a partition of the realty into Parcel A or Parcel B and one eight-ninths (8/9ths) parcel was feasible and practical. Implicit in the Commissioner's conclusion is that any other form of partition of the realty was not feasible or practical and that any other form of partition would be with great prejudice to the owners.

The testimony of the appraiser is also relevant in denying the contention of the appellants.

We are of the opinion that implicit in the trial court's finding that a partition of the realty into nine individual parcels is not feasible, is the trial court's conclusion that partition of the realty into nine individual parcels cannot be made without great prejudice to the owners.

The record of the case sustains the trial court in its decree of public sale of the realty in question. Under the provisions of HRS § 668-7(6) the trial court is empowered to order the sale of the realty in question "where for any reason partition in kind would *be impracticable* in whole or in part *or be greatly prejudicial* to the parties interested".

In our opinion the words "not feasible" in the context of the trial court's finding are synonymous with the word "impracticable". *See People v. Poly,* 40 N.Y.S. 990, 992, 17

Misc. 162, 164, 11 N.Cr. 346 (1896); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (unabridged, 1966).

The other issues raised by the appellants are without merit.

*Boyce R. Brown, Jr. (Mattoch, Kemper & Brown* of counsel) for defendant-appellant and defendant-intervenor-appellant.

*Hiroshi Sakai (Richard M. C. Lum* with him on the brief) for plaintiffs-appellees.

### DISSENTING OPINION OF RICHARDSON, C.J.

I respectfully dissent. The statutes involved provide in pertinent part:

When two or more persons hold or are in possession of real property as joint tenants or as tenants in common, in which one or more of them have an estate in fee, or a life estate in possession, any one or more of such persons may bring an action in the circuit court of the circuit in which the property or some part thereof is situated, for a partition of the property, according to the respective rights of the parties interested therein, and for a sale of the same or a part thereof, *if it appears that a partition cannot be made without great prejudice to the owners.* The several circuit courts shall have power, in any action for partition, to proceed according to the usual practice of courts of equity in cases of partition, and according to this chapter in enlargement thereof. (Emphasis added.) HRS Section 668-1 (Supp. 1974).

The court shall have power:

To divide and allot portions of the premises to some or all of the parties and order a sale of the remainder, or to sell the whole, where for any reason partition in kind would be *impracticable* in whole or in part or be *greatly prejudicial to the parties* interested, and by judgment or judgments to invest the purchaser or purchasers with title to any property sold, and use the proceeds to equalize the general partition . . . (Emphasis added.) HRS Section 668-7(6) (Supp. 1974).

HRS Section 668-7(6) (Supp. 1974) empowers the trial court to partition subject property by judicial sale where actual division is found to be *impracticable or greatly prejudicial* to the interested parties.

At plaintiffs' request[1] and pursuant to HRS Section 668-13 (Supp. 1974) the trial court appointed a Commissioner in partition:

> [T]o investigate and report to the Court as to the feasibility and practicality of the partition of the property described in the Complaint filed herein for a (1) one-ninth (1/9th) interest in favor of Antone S. Teixeira, and a (2) eighth-ninth (8/9th) [*sic*] interest in favor of a proposed purchaser or in any other division and to prepare a plan for such division into lots or as to the non-feasibility and impracticality of any physical partition of said property.[2]

In accordance with his instructions, the Commissioner conducted the said investigation and concluded that partition in kind of the Teixeira estate into a one-ninth (1/9th) and an eight-ninths (8/9ths) division was feasible. The report reads as follows:

> 3. Based upon my investigation and experience as a licensed surveyor in the State of Hawaii, it is *both feasible and practical to partition in kind the Property into two separate parcels* — one parcel would contain 19,814 square feet and the other parcel would contain 158,511 square feet. It is a logical partition in kind because defendants Antone S. Teixeira and Marjory Ann Teixeira own a parcel of land contiguous to the Property, which the new subdivided 19,814 square feet parcel can be consolidated into without creating an isolated parcel of land. (Emphasis added.) (Record, at 103.)

The Commissioner then concluded by recommending partition in kind creating Parcel A as shown on Exhibit A (Record, at 104) and the eight-ninths (8/9ths) portion.

---

[1] Record; pp. 99-100.

[2] Record, at 100, "ORDER FOR COMMISSIONER TO INVESTIGATE AND REPORT TO THE COURT RE: FEASIBILITY OF PARTITION OF PROPERTY."

The partition statute allows partition by judicial sale where actual division is shown to be *impracticable or greatly prejudicial* to the interested parties.[3] Absent a showing of great prejudice to the owners resulting from an actual division of the property, it must then be determined if such division is impracticable. In so ascertaining whether partition in kind is impracticable, I believe the focus should be placed on whether physical division of the subject property is feasible and practical, that is, whether the property is susceptible of partition in kind. If such actual division is indeed found to be practicable, as in the case at bar where the Commissioner so recommended, then HRS Section 668-7(6) (Supp. 1974) precludes the trial court from ordering a judicial sale, but rather authorizes the court to effect partition in kind of the realty.

In the instant case the Commissioner's finding that partition in kind was feasible and practical[4] offered evidence of practicability sufficient to obviate the necessity of partition by judicial sale. I therefore conclude that the trial court erred in ordering partition by sale in light of the Commissioner's Report and in the absence of any showing of great prejudice to the owners. I would thus reverse.

Given the foregoing I deem it appropriate to comment on the action for partition — a remedy which is particularly significant in Hawaii where the retention of land ownership in one family line is an important interest worthy of preservation and diligent protection.

At common law the action for partition of land was designed to allow co-tenants to divide land held jointly.[5] The then existing law only allowed a division in kind, *i.e.*, an actual division of the property. 4A Powell, *Real Property,* § 612 at 650. (Hereinafter cited as *Powell.*) More recently statutes have been enacted in almost every jurisdiction to comprehensively deal with the partition remedy. These statutes established the power and jurisdiction of a court to effect

---

[3] HRS Section 668-7(6) (Supp. 1974).

[4] Record, at 103, COMMISSIONER'S REPORT.

[5] See generally 1967 WIS. L. REV. 988.

partition by a sale of the property with a division of the proceeds where circumstances are such that a division in kind would be injurious or impractical. *Powell*, § 609 at 636 and cases cited therein. However, even given the various modifications of the orginal remedy, the purpose of partition has remained the same, that is:

> . . . [T]o provide a means by which people, finding themselves in an unwanted common ownership, can free themselves from the relationships incidental to such common ownership. *Powell*, § 609 at 636.

Notwithstanding the statutory provisions establishing partition by judicial sale, it is often said that "the law favors partition in kind." 4 *Thompson on Real Property*, § 1828, at 312 (1961 repl.) and cases cited therein. See also *Powell*, § 612 at 650.

It is thus the general rule that:

> . . . As between a partition in kind or sale of land for division, the courts will favor a partition in kind, since this does not disturb the existing form of inheritance or compel a person to sell his property against his will, which, it has been said, should not be done except in cases of imperious necessity. *Trowbridge v. Donner*, 152 Neb. 206, 213, 40 N.W.2d 655, 660 (1950).

It is especially important to restate this preference for partition in kind so that in Hawaii we preserve the right of the individual joint tenant or tenant in common to hold onto his parcel of land where he opposes any forced sale of such property. Indeed, there are interests other than financial expediency which I recognize as essential to our Hawaiian way of life. Foremost is the individual's right to retain ancestral land in order to perpetuate the concept of the family homestead. Such right is derived from our proud cultural heritage wherein it was believed that:

> . . . [T]he one guarantee of survival [was] land . . . [which was] in short supply either because of the density of population or because of the large holdings of exploiting gentry landholders . . . .
>
> . . . Because peasants depend for their survival on specific plots of land, ownership is their goal and once

land is owned it must be *preserved and passed on intact* to the children. All this makes for the *great emphasis* on the *survival of the particular family line which owns the particular plot of land.* Thus peasants stress the unity and continuity of the family — large number of children, particularly sons who will work the plots of land, inherit them, and perhaps add to them. (Emphasis supplied.) B. Hormann, *Hawaii's People in Transition* 98, in ASPECTS OF HAWAIIAN LIFE AND ENVIRONMENT: COMMENTARIES ON SIGNIFICANT HAWAIIAN TOPICS BY FIFTEEN RECOGNIZED AUTHORITIES 93 (1971). Published in 1965 as the Kamehameha Schools 75th Anniversary Lectures.

Undoubtedly there will be circumstances which justify the invocation of partition by judicial sale under HRS §§ 668-1 and 668-7(6) (Supp. 1974). In the situation where the statutory grounds are met the preference for actual division of property must yield to partition by judicial sale.

But let us recognize that such preference for partition in kind should not be so easily disregarded. "Mindful of our Hawaiian heritage,"[6] we must not lose sight of the cultural traditions which attach fundamental importance to keeping ancestral land in a particular family line.

---

[6] Hawaii Constitution, Preamble.